**Virgil Lee BAKER, Jr., Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16920.**

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1972.

Curtis A. Parks, Public Defender, Tulsa County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., James E. Briscoe, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Virgil Lee Baker, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Oklahoma, for the offense of First Degree Burglary, After Former Conviction of a Felony; his punishment was fixed at ten (10) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Richard C. Cerka testified that on the evening of December 19, 1970, he was staying in the Wales Transportation bunkhouse in Tulsa, Oklahoma, and that a companion, Mr. Edwards, awoke him at approximately 2:30 a. m. He described the bunkhouse as having one locked door and the other door was shut, although not

locked, at the time he retired to bed. Upon awaking he noticed that his clothes were gone along with his personal belongings. He and Edwards pretended to be asleep and a short time later he observed the defendant come into the bunkhouse and walk over to Mr. Edwards' bed. Cerka confronted the defendant and asked him to identify himself. At this point, defendant identified himself and stated that he was looking for someone. The defendant denied taking the witness' property.

Cerka asked the defendant to reveal the contents of his pockets, at which time, the defendant reached into his pockets and laid out a handful of change containing some quarters, nickels, dimes, a 1922 silver dollar and a 1966 Kennedy half dollar. Cerka identified State's Exhibits Three and Four as the silver dollar and Kennedy half dollar which he had carried in his possession for some time. He testified that in addition to the silver dollar and half dollar, he had approximately fourteen quarters, a ten dollar bill and two one dollar bills missing from his personal belongings. Cerka started to call the police and the defendant told him not to, because he "couldn't afford a bust." (Tr. 69) Defendant continued to protest that he hadn't taken Cerka's money and stated that he had come to the bunkhouse to steal a T.V. set. Cerka stated, " 'I believe you are lying to me,' " whereupon the defendant struck him in the face, breaking his nose.

Cerka left the building, went to a fire station and asked a fireman to call the police. He could still observe the bunkhouse and saw the defendant leave the premises. A short time later a police officer arrived and after a short search for the defendant, he was found standing by the front door of the bunkhouse. At the police officer's advice, Cerka placed the defendant under a citizen's arrest.

Samuel Edwards testified that he was a truck driver employed by the Wales Transportation Company. On the evening in question, he was staying at the company bunkhouse in Tulsa. He was the last one to go to bed that evening; one of the doors to the bunkhouse was locked, and the other one was closed. Edwards further testified that approximately one hour after he had gone to bed, he was awakened by a noise like keys dropping to the floor. He observed the defendant going by the end of the bunk and out the door. He woke Cerka up, who discovered that his clothing was missing. He advised Cerka to lay back down because the person might be back. Approximately ten minutes later the defendant returned and was confronted by Cerka. His testimony of the further proceedings did not differ from the witness Cerka's.

Lowell Flett testified that he was a foreman for the Wales Transportation Company and that the defendant had previously been employed by the company. He further testified that he had not given the defendant permission to enter the bunkhouse.

Officer Hale testified that he received a call at approximately 3:00 a. m., and proceeded to the fire station where he had a conversation with Cerka. They searched the area for a short time and returned to the bunkhouse and observed the defendant standing in the doorway. He further testified that he assisted Cerka in performing a citizen's arrest of the defendant for assault and battery. He transported the defendant to the police station and performed a standard search at the booking desk. He said the defendant had in his possession one silver dollar, one half dollar, about fourteen or fifteen quarters, assorted nickels and dimes, one ten dollar bill and two one dollar bills. He identified State's Exhibit Five as an envelope in which he placed the money taken from the defendant, including State's Exhibits Three and Four.

Officer McCoy testified that he assisted Officer Hale in the investigation at the scene. He subsequently transported Cerka to the police station and was present when Officer Hale searched the defendant. The

contents of defendant's pockets were inventoried. He later returned to the area of the trucking company and found a billfold, credit cards, clothing and other personal things belonging to Cerka.

Defendant testified that he was playing pool until 2:30 or 3:00 on the morning in question. He and a man he met in a club decided to leave for an all night club to shoot some more pool. The man made an improper advance toward the defendant, whereupon the defendant slapped him a couple of times and the man stopped the car and let the defendant out. He walked to the Wales Transportation Company, where he had previously worked, to make a telephone call to his brother to come get him. The phone was busy and as he was walking back out the door he was stopped by Edwards. Cerka woke up and accused him of stealing his possessions. He was asked if he could identify himself and if he minded being searched. The defendant showed them his driver's license and placed the change in his pockets on the bed. Cerka continued to accuse him of stealing the property and called him a liar. He became angry at Cerka's accusations and struck Cerka in the nose. He denied taking Cerka's money and clothing and stated that he had won the money, including the silver dollar, in a pool game.

█ The first proposition asserts that the trial court erred in abusing its discretion by refusing to allow the defendant to challenge the truth of a statement submitted in a pre-sentence investigation report prepared by the probation office. The Record reflects that after the jury returned a verdict of guilty in the first stage proceedings, the defendant waived a jury trial as to the second stage and stipulated as to the former conviction. Defendant was thereupon found guilty of Burglary in the First Degree, After Former Conviction of a Felony. Defendant requested the Court to postpone sentencing and to refer the case to the Department of Corrections for a pre-sentence investigation. On the date set for the pronouncement of judgment and sentence after receiving the pre-sentence report, the defendant requested permission to question the probation officer who prepared the report. The Record reflects the following transpired:

"MR. GHOSTBEAR: Because I believe there were certain statements set out in the report submitted by the Parole and Probation Officer that we challenge as being as being [sic] correct.

"BY THE COURT: You mean it is your contention that this Information contained herein is false?

"MR. GHOSTBEAR: I didn't say it, your Honor, that it is false.

"BY THE COURT: Incorrect or false?

"MR. GHOSTBEAR: There are a couple of matters in there I would say are incorrect.

"BY THE COURT: What are these matters?

"MR. GHOSTBEAR: I direct the Court's attention to page two (2) in the evaluation, where it is stated that the defendant entered a plea of guilty.

"BY THE COURT: The records reflect the defendant had a jury trial and was found guilty by a jury.

"MR. GHOSTBEAR: Yes, sir, that is correct. However, the evaluation, the recommendation in this instance, by this officer, does not recommend probation, and I believe based on the evaluation based on this officer's statement, as to the defendant's version, I think it may have had some effect on his determination, knowing whether or not the man had gone to trial.

"BY THE COURT: Well, I don't believe this Officer's report would have been any different had he known the man had a jury trial rather than entering a plea of guilty. I don't believe the recommendation would have been any different.

"MR. LANG: No, your Honor, it would not have.

"MR. GHOSTBEAR: There was one further matter, your Honor, the officer indicated in his report that this officer interviewed the defendant at length.

"BY THE COURT: Well, I am not going to go into what constitutes 'at length.' No, I am not going to hear any testimony on that. This is just a pre-sentencing investigation, and the recommendation which the Court can follow or not follow as it sees fit, and I don't see any justification for any examination of the person making the report. So, I am going to overrule your request to question him, and allow you an exception." (Tr. 222–223)

We have carefully examined the presentence investigation and are of the opinion that the trial court's refusal to allow the defendant to question the probation officer as to the collateral matters asserted was not an abuse of discretion. We observe the report reflects the criminal record of the defendant, which defendant does not contest, as follows:

"The defendant has a very lengthy criminal record. Recidivist sheets indicate that the defendant has been incarcerated on several different occasions. The defendant was also sentenced to a four year term in the Federal Reformatory in El Reno, at which time the defendant was carcerated [sic] for two years; the remaining time was spent on parole which was revoked on November 25, 1966."

We further observe that it is apparent that the trial court was not prejudiced by the pre-sentence report and that the sentence imposed was the minimum provided by law. We therefore find this proposition to be without merit.

■ The final proposition contends that the trial court erred in overruling an objection to the identity of evidence which was admitted after the chain of custody appeared to have been broken. Although this proposition is improperly before this Court and the defendant did not support his contention by citations of authority, we

have examined the same and are of the opinion that it is without merit. The witness Cerka identified the 1922 silver dollar and the 1966 Kennedy half dollar which were taken on the night in question. Officer Hill testified that he obtained the silver dollar, the half dollar and the assorted change and $12.00 from the defendant, and placed them in the envelope. The envelope was placed in the property room of the police department until the day prior to trial whereupon it was removed and delivered to the District Attorney.

In conclusion we observe the Record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

SIMMS, J., concurs.

BRETT, J., concurs in results.